Steven M. TOY, Plaintiff,

v.

UNITED STATES et al., Defendants.

Civil Action No. 00–0929 (RMU).

United States District Court,
District of Columbia.

July 30, 2002.

Bridget Read Mugane, Columbia, MD, for plaintiff.

Michael C. Johnson, Ana Felisa Matheson, U.S. Attorney's Office, Washington, DC, for defendant.

## MEMORANDUM OPINION

URBINA, District Judge.

GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S AND THE DEFENDANTS' RESPECTIVE MOTIONS FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This case comes before the court after having been remanded to the Foreign Service Grievance Board ("FSGB") for further review and proceedings consistent with the court's December 7, 2000 order directing that the FSGB clearly articulate its findings of fact and analysis of precedent when reaching its decision to refuse to remove the plaintiff's negative employee evaluation report ("EER") from the plaintiff's personnel file. The plaintiff is a U.S. foreign service officer who seeks judicial review of the FSGB's decision on remand. He moves the court for summary judgment pursuant to Federal Rule of Civil Procedure 56 asserting that the FSGB's decision violates the Foreign Service Act of 1980, as amended, 22 U.S.C. § 3901 *et seq.* ("FSA"), the Administrative Procedure Act, as amended, 5 U.S.C. § 701 *et seq.* ("APA"), and the Fifth Amendment's Due Process Clause. The defendants are the United States and Colin Powell, named in his official capacity as Secretary of State. Also before the court is the defendants' motion for summary judgment pursuant to Rule 56. The case is now ripe for adjudication since the FSGB's decision on remand meets the requirements set out by this court's remand order. After consideration of the parties' submissions and the relevant law, the court grants in part and denies in part the parties' cross-motions for summary judgment thereby ordering the defendants to strike from the plaintiff's EER all references to the plaintiff's alleged excessive reliance on questionably narrow interpretations of laws and regulations. In all other respects, the court determines that the FSGB's decision on remand is not arbitrary and capricious and, thus, does not violate the APA.

### II. BACKGROUND

#### A. Factual Background

The plaintiff is a tenured Class 3 foreign service officer who joined the Foreign Service in 1984. Mem. of P. & A. in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl.'s Mot.") at 5. From August 27, 1995 to April 15, 1996, the plaintiff served as an Administrative Officer ("AO") at the U.S. Consulate General in Bombay (now Mumbai), India. *Id.* at 5. The plaintiff was the direct supervisor of two Americans, one of whom was Susan Frost, the post's General Services Officer ("GSO"), and he indirectly supervised 15 Foreign Service Nationals ("FSNs") and a 66–person guard force.

*Id.* at 6. The parties agree that the plaintiff and Ms. Frost had a difficult and contentious relationship from the outset. *Id.* at 5–6; Defs.' Mot. for Summ. J. ("Defs.' Mot.") at 2. The plaintiff's working relationship with Ms. Frost constitutes the majority of the negative comments in his EER for the period of his tour in Mumbai. Administrative Record ("A.R.") at 56–58. The plaintiff believes that his EER is falsely prejudicial against him because it places the majority of blame for the strained relationship between the plaintiff and Ms. Frost on the plaintiff rather than on Ms. Frost. Pl.'s Mot. at 5.

Each year, foreign service selection boards evaluate foreign service officers to determine who will be promoted or selected out (i.e., mandatorily retired). *Id.* at 5. The selection boards base their recommendations on an officer's performance file, which consists primarily of EERs. *Id.* EERs reflect the assessment of two supervisors—in this case, Consul General Louis Warren in Mumbai (the rater for the plaintiff's EER) and Administrative Counselor William Kelly in New Delhi (the reviewer for the plaintiff's EER)—who review the subject employee's job performance during the review period in question. Defs.' Statement of Undisputed Material Facts ("Defs.' Statement") at 2.

The plaintiff recounts several instances of insubordinate behavior by Ms. Frost including her refusal to write weekly reports, her objection to advance authorization of overtime work, and noncompliance with policies concerning the transmission of messages by cable.[1] Pl.'s Mot. at 5. Both Consul General Warren and Administrative Counselor Kelly were aware of the troubled relationship. *Id.;* Defs.' Statement at 1–2. To prevent further friction between the plaintiff and Ms. Frost, Consul General Warren removed Ms. Frost from the plaintiff's supervision in February 1996. Defs.' Statement at 2. The plaintiff alleges that this was done to avoid a threatened Equal Employment Opportunity ("EEO") complaint by Ms. Frost against Consul General Warren. Pl.'s Mot. at 6. Administrative Counselor Kelly also visited Mumbai twice during the rating period, once in October 1995 and once in March 1996, to counsel the plaintiff and Ms. Frost about their strained working relationship. *Id.* at 5–6, Defs.' Statement at 2.

On May 1, 1996, Consul General Warren and Administrative Counselor Kelly completed the plaintiff's EER for the period from August 27, 1995 to April 15, 1996. A.R. at 58. In the EER, both Warren and Kelly recognized the plaintiff's relationship with Ms. Frost as troublesome. A.R. at 56, 58. Warren wrote, "Steve's [ (the plaintiff's) ] method of showing disapproval to his GSO subordinate helped contribute to a significant conflict that required intervention to maintain Post morale." A.R. at 56. Similarly, Kelly added, "The major shortfall in Steve Toy's performance has been in the area of interpersonal skills, and more specifically in his inability to reconcile interpersonal differences with the untenured junior officer [ (Ms. Frost) ] who serves as General Services Officer under his guidance." *Id.* at 58. In June 1996, the U.S. Ambassador in New Delhi requested via cable that the Director General of the Foreign Service curtail the plaintiff's assignment in Mumbai. *Id.* at 85–86. The Ambassador stated, "In a word, I have lost confidence in Mr. Toy's

---

1. The plaintiff also attempts to show that despite these repeated incidents, he remained patient and professional. Pl.'s Mot. at 17. While the plaintiff initially insisted on clearing all cables sent by Ms. Frost, after 60 days he gave her permission to send some cables without requiring his clearance. *Id.*

judgment and ability to serve as Mumbai's Administrative Officer and conclude that the best interests of all concerned would be served by his departure and reassignment." *Id.* at 86. Subsequently, in July 1996, the U.S. Department of State returned the plaintiff to duty in Washington, D.C. *Id.* at 87. The plaintiff is now posted in Moscow as a U.S. foreign service officer. Pl.'s Mot. at 1.

## B. Procedural Background

On January 20, 1998, the plaintiff filed a grievance concerning his EER with the U.S. Department of State. On March 10, 1998, the U.S. Department of State denied all relief. On May 10, 1999, the plaintiff timely appealed that decision to the FSGB. On November 4, 1999, without a hearing, the FSGB denied all requested relief to the plaintiff. On April 8, 2000, the plaintiff filed a complaint for relief from final agency action in this court. By its Memorandum Opinion and Order ("Mem.Op.") dated December 7, 2000, this court granted in part and denied in part the plaintiff's motion for judgment on the pleadings, remanding the case to the FSGB "for specific findings of fact and a full and clear articulation of the reasons for the FSGB's decision." Mem. Op. dated Dec. 7, 2000 at 2.

On remand before the FSGB, no hearing was held. Each party submitted briefs that presented no new evidence. Pl.'s Mot. at 7. The FSGB again denied all relief in its June 14, 2001 Decision on Remand. Pl.'s Pet. for Review of Agency Decision on Remand at 1.[2] On December 7, 2001, the plaintiff petitioned for a review of the Decision on Remand. The plaintiff also moved for judgment on the pleadings, which the court converted *sua sponte* to a motion for summary judgment because of the court's reliance on evidence outside the pleadings. FED.R.CIV.P. 12(c); Order dated June 13, 2002. The court allowed the parties an opportunity to supplement their submissions related to the plaintiff's newly created motion for summary judgment but neither side elected to do so. The defendants also move for summary judgment. These cross-motions for summary judgment are now before the court and are ripe for decision.[3] On June 17, 2002, the court, on the plaintiff's motion, ordered that the file be opened retroactive to December 7, 2001 (the date of the plaintiff's petition for review of agency decision) and required that the defendant submit a copy

---

2. In both his petition for review of agency decision on remand and motion for judgment on the pleadings, the plaintiff relies on and cites to facts in the administrative record and alleged in his original complaint. The facts provided in this opinion as background reference the plaintiff's original complaint (prior to remand) as well as the pleadings and submissions of both parties after the FSGB's decision on remand.

3. The court notes that the plaintiff failed to submit a separate concise statement of genuine issues with his opposition to the defendants' motion for summary judgment. As such, the plaintiff failed to comply with Local Civil Rule 56, which requires that "any opposition to a motion for summary judgment must be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the record relied on to support the statement." LCvR 56.1. The rule also states that in determining any such motion, the court *may* assume that facts identified by the movant are admitted unless controverted in the statement of the opposition. *Id.* In *Burke v. Gould*, 286 F.3d 513, 518 (D.C.Cir.2002), the D.C. Circuit held that a violation of Local Rule 56 does not preclude the district court from reviewing a motion for summary judgment. Since the plaintiff's memorandum accompanying his motion makes clear the issues in dispute, the court will exercise its discretion to entertain the cross-motions before it notwithstanding the plaintiff's failure to provide a statement of genuine issues.

of the certified administrative record. The record is now complete.

## III. ANALYSIS

### A. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one of which the resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### B. The Scope of Review

Since this case involves a challenge to a final administrative action, the court's review is limited to the administrative record. *Fund for Animals v. Babbitt*, 903 F.Supp. 96, 105 (D.D.C.1995) (citing *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)). "Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record." *Id.* (citing *Richards v. Immigration & Naturalization Serv.*, 180 U.S.App.D.C. 314, 554 F.2d 1173, 1177 (D.C.Cir.1977)). The FSA provides that "any aggrieved party may obtain judicial review of a final action of the FSGB in the district courts of the United States." 22 U.S.C. § 4140. The FSA further provides that the APA "shall apply without limitation or exception" to a district court's review. 22 U.S.C. § 4140(a). The APA requires a reviewing court to set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Moreover, the agency's decision must evince "a rational connection between the facts found and the choice made." *Motor*

*Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Finally, "[w]here the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action." *AT & T Co. v. Fed. Communications Comm'n,* 974 F.2d 1351, 1354 (D.C.Cir.1992).

As the Supreme Court has explained, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856. In reviewing the action of an agency under 5 U.S.C. § 706(2)(A), the court must determine whether the agency has examined the relevant data and articulated a satisfactory explanation for its action. *Id.* "In thoroughly reviewing the agency's actions, the court considers whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors." *Fund for Animals,* 903 F.Supp. at 105 (citing *Marsh v. Oregon Natural Res. Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)). In addition, the plaintiff has the burden of showing "by cogent and clearly convincing evidence" that the decision was the result of a material legal error or injustice. *McDougall v. Widnall,* 20 F.Supp.2d 78, 82 (D.D.C.1998) (Green, J.) (internal citations omitted).

**C. The FSGB's Decision Is Not Arbitrary and Capricious With Respect to the Question of Who Bore Primary Responsibility for the Failed Relationship Between the Plaintiff and Ms. Frost**

■ As previously noted, a district court's review of a FSGB decision is highly deferential. If the FSGB acted within the scope of its authority in making its decision, explained its decision, and relied on facts supported in the record, the court will uphold the FSGB's decision.

**1. The FSGB Made Specific and Adequate Findings of Fact**

■ In his petition for review of agency decision on remand, the plaintiff contends that the FSGB failed to make specific findings of fact relevant to its decision and failed to present logical reasons for its conclusion. Pl.'s Pet. for Review at 1–3. This court remanded the plaintiff's case to the FSGB on December 7, 2000 in large part because of deficiencies in the FSGB's findings of fact contained in the FSGB's first decision. The FSGB's first decision, however, sufficiently recounted the parties' competing versions of the facts. FSGB Decision 99–40 (November 4, 1999); A.R. at 244–56; Mem. Op. dated Dec. 7, 2000. The error lay, though, in that the FSGB did not make clear which factual contentions it adopted, which it rejected, and why it did so. *Id.* The requisite "rational connection" simply was not present between the conclusion and the findings. *Id.; Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856.

In its decision on remand, the FSGB has remedied the fact-finding deficiencies present in its original decision. The FSGB again notes, as it did in its first decision, that the plaintiff (or grievant) bears the burden of showing by a preponderance of the evidence that his grievance is meritorious—that the statements in his EER are falsely prejudicial. Decision on Remand ("Dec. on Rem.") at 12; 22 C.F.R. § 905.1(a). The FSGB finds that while Ms. Frost was "outspoken, argumentative and not always quickly responsive," there was also ample evidence to suggest that the statements in the plaintiff's EER re-

garding his supervisory abilities (or deficiencies) are also true. Dec. on Rem. at 25–26. The parties agree that the plaintiff and Ms. Frost simply did not get along. Pl.'s Mot. at 8; Defs.' Statement at 1–2. Rather, the dispute encompasses the FSGB's interpretation of the events that led to the plaintiff's negative EER and its decision that the plaintiff should bear significant blame for the failed relationship. *Id.*

 As in his original complaint, the plaintiff alleges that the FSGB failed to adequately weigh the defense witnesses' lack of personal knowledge and bias in favor of his subordinate, Ms. Frost. Pl.'s Mot. at 20–24. As the finder of fact, however, the FSGB has the authority to find one witness more credible than another, in this case finding the agency's witnesses more credible than the plaintiff and his witnesses. *United States v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984) (reasoning that the finder of fact is entitled to assess all evidence weighing on credibility and bias to determine the accuracy and truthfulness of testimony); *United States v. Anderson,* 881 F.2d 1128, 1136 (D.C.Cir. 1989) (employing the same reasoning as *Abel*); *accord United States v. Sheffer,* 896 F.2d 842, 847 (4th Cir.1990) (acknowledging that it is the responsibility of the finder of fact to assess witness credibility). As finder of fact, the FSGB can also assess the existence and degree of any bias on the part of the witnesses. *Id.* Even when exercising its discretion in this regard, "the agency must give sufficient indication of the grounds for its exercise of discretion that the reviewing tribunal can appraise that determination under the appropriate standards of review." *Matlovich v. Sec'y of the Air Force,* 591 F.2d 852, 857 (D.C.Cir.1978).

The FSGB has now provided a clear "indication of the grounds for its exercise of discretion" by noting that the statements on which it relied were found to be "inherently consistent with one another, convincing in their detail and specificity as well as in their support for observations contained in the EER concerning the Toy–Frost relationship." Dec. on Rem. at 20; *Matlovich,* 591 F.2d at 857. The FSGB also considered the fact that some of the officers who provided testimony against the plaintiff had disagreements with the Mumbai post's management (including the plaintiff and the Consul General), but determined that "no clear connection" was shown between these disputes and the witnesses' "opinion of [the plaintiff] and his management style and personality." Dec. on Rem. at 21. The FSGB is also careful to note that it did not rely solely on the testimony of allegedly biased witnesses, but also relied on the statements of the plaintiff's EER rater and reviewer (Consul General Warren and Administrative Counselor Kelly), who were senior officers at the post and the embassy, as well as other tenured personnel. *Id.* at 21–22. In this regard, the plaintiff seeks to assign error to the FSGB's failure to find Consul General Warren's testimony as biased. Pl.'s Mot. at 28–30. The plaintiff alleges that Consul General Warren gave the plaintiff a negative evaluation because he was afraid of an EEO suit if he did not appease Ms. Frost. *Id.* The FSGB, however, weighed the evidence on both sides of the issue and adequately explained its decision not to find Consul General Warren's testimony biased. Dec. on Rem. at 15–24. This court will not disturb such a finding because it meets the legal standards set forth earlier. *Matlovich,* 591 F.2d at 857.

 Finally, the plaintiff submits an affidavit swearing that the contents of his typewritten notes (written during his assignment in Mumbai) are true and that these notes constitute sufficient evidence

to show that the plaintiff should not have been held responsible in the EER. Pl.'s Notice of Filing dated May 10, 2002. In doing so, the plaintiff ignores the well established rule that judicial review of an agency decision is normally limited to the administrative record. *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). This court, however, need not decide whether the plaintiff's affidavit is properly a part of the record because the FSGB notes that it considered all the evidence before it on both sides, including the plaintiff's notes (which are a part of the Administrative Record), and found that in sum, the plaintiff is unable to meet his burden of proof that more likely than not his EER was falsely prejudicial. Dec. on Rem. at 25–26; 22 C.F.R. § 905.1(a). Since the record reflects that the FSGB has examined the relevant data and articulated a reasonable explanation for its decision, the court upholds the FSGB's Decision on Remand. *Doyle v. England,* 193 F.Supp.2d 202, 208 (D.D.C.2002) (internal citations omitted). Accordingly, with respect to this question, the defendants have met their burden of proving that there are no material facts in dispute and they are entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### 2. The FSGB's Decision on Remand Properly Considers and Explains the FSGB's Application of Precedent

■ The FSGB has two precedent decisions which the FSGB found applicable to this case. In FSGB Decision 91–024 (1992), the FSGB faulted the supervisor for the failed working relationship with a subordinate because the supervisor had not properly supervised the subordinate. Dec. on Rem. at 13–14. In Decision 95–100 (1996), the FSGB found that it was the subordinate who was at fault because the subordinate, unlike in 91–024, was properly and sufficiently supervised. *Id.* The plaintiff claims that 95–100 should be the controlling precedent in this case because he alleges that his supervision was sufficient.

The FSGB, however, notes that the cases, when examined together, do not stand for the single proposition that it is always the subordinate's responsibility to adjust to the subordinate's supervisor (or vice versa). *Id.* Rather, the FSGB concludes that the cases read together stand for the proposition that it is the "totality of the circumstances" that determines who will bear responsibility for a failed working relationship. *Id.* The plaintiff believes that his supervisory style was completely appropriate and that the blame for the troubled relationship between the plaintiff and Ms. Frost belongs on Ms. Frost and not the plaintiff. Pl.'s Mot. at 27–30. The plaintiff seeks to have the court reevaluate the evidence to determine whether Decision 95–100 could be applied in the plaintiff's favor. *Id.* at 30–34. This, however, is not the function of a district court when reviewing an agency decision. *Hall v. Baker,* 867 F.2d 693, 696 (D.C.Cir.1989) (stating that *the agency's* decision must explain any departure if the agency departs from prior policy). Indeed, the FSGB acted within its power when explaining its precedent and concluding that in light of that precedent, the weight of the evidence does not support the plaintiff's allegations. *Id.* Accordingly, the court grants the defendants' motion for summary judgment on this point and denies the plaintiff's motion for summary judgment on the same point.

### D. The FSGB's Decision on Remand Is Arbitrary and Capricious With Respect to the Plaintiff's Allegedly Excessive Reliance on Questionably Narrow Interpretations of Laws and Regulations

■ In its November 4, 1999 decision, the FSGB upheld the EER's criticism

that the plaintiff excessively relied on questionably narrow interpretations of laws and regulations, but the FSGB did not give any examples of incidents or cite any regulations. The court noted this in its December 7, 2000 opinion, and the FSGB on remand provided four examples of instances where the plaintiff was accused of narrowly (or, as the defendants maintain, incorrectly) interpreting laws and regulations. Dec. on Rem. at 26–27. Yet the court observes that the Decision on Remand still does not cite any specific laws or regulations which the plaintiff is accused of wrongly interpreting, and for the following reasons, the court reverses the FSGB's Decision on Remand with respect to this single issue.

### 1. The FSGB's Findings of Fact and Conclusions Contradict the Evidence in the Record

The FSGB made the following findings of fact with respect to the plaintiff's interpretations of laws and regulations:

> Supporting evidence abounds: (1) by the comment of Coll who feared he had set Toy's 'wrath' on Frost because a procedure had not been strictly followed; (2) in the observation in the EER that complaints were received over 'several incidents' when the local guard force in acting under his supervision 'rigidly adhered to instructions;' (3) by the remark of the Ambassador that she had lost confidence in Toy's judgment; (4) and in the statement by witness Monie who knew Toy as a 'man of rules' and considered him nevertheless 'too strict according to the rule book.'

Dec. on Rem. at 26–27. The FSGB found that the criticism in the plaintiff's EER was not that he followed regulations but that his interpretation of them was "excessively narrow." *Id.* at 26. It appears, however, that the FSGB's decision does not acknowledge evidence in the record that the plaintiff was simply acting as he was required. As such, the court grants the plaintiff's motion for summary judgment on this point and thereby denies the defendants' motion for summary judgment on the same point.

### 2. There is No "Rational Connection" Between the FSGB's Findings of Fact, Its Conclusions, and the Evidence in the Record

A district court reviewing an administrative decision should uphold that decision under the arbitrary and capricious standard if there is a rational basis for the agency's decision. *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856. Here, the FSGB's determination that the statement in the plaintiff's EER regarding his "excessive reliance on questionably narrow interpretations of laws and regulations" is not falsely prejudicial has no rational connection to the evidence presented in the record *and cited by the FSGB in its decision.* The FSGB's reliance on "several incidents" in which the local guard force "rigidly adhered to instructions" ignores testimony in the record from the supervisor of the local guard force, who explained that there were indeed complaints from consulate visitors regarding entry procedures, but "[a]llowing visitors contrary to the standard operating procedure would have been a breach in policy." A.R. at 165. The FSGB also relies on its finding that Ms. Monie, a FSN, considered the plaintiff "too strict according to the rule book," but the FSGB did not make *any* findings as to *how* the plaintiff was too strict and to which rules Ms. Monie was testifying. Dec. on Rem. at 26–27. Unexplained, too, is the FSGB's finding regarding Mr. Coll's "setting the plaintiff's wrath" on Ms. Frost for not following a procedure. *Id.*

In sum, these "incidents" in which the plaintiff is accused of excessively relying on questionable interpretations are wholly unsupported by the evidence in the record. The court views this aspect of the FSGB's decision as arbitrary and capricious because of the lack of evidentiary support. *See BFI Waste Sys. of N. Am., Inc. v. Fed. Aviation Admin.*, 293 F.3d 527, 2002 WL 1310607 (D.C.Cir.2002) (reversing and vacating an agency's decision because the findings were unsupported by substantial evidence in the record). Since the requisite "rational connection" is missing in the FSGB's Decision on Remand with respect to this issue, the court grants the plaintiff's motion for summary judgment on this issue, reverses the FSGB's ruling on this narrow question, and orders that all references to the plaintiff's "excessive reliance on questionably narrow interpretations of laws and regulations" be removed from his August 27, 1995 to April 15, 1996 EER.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the plaintiff's motion for summary judgment, and grants in part and denies in part the defendants' motion for summary judgment. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this *30th* day of July 2002.